NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
AMTRUST BANK,

    Plaintiff,

v.

JOHN F. BURKE d/b/a JFB APPRAISAL,
et al.,

    Defendants.

Civil Action No. 12-7398 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendants John F. Burke d/b/a JFB Appraisal, James R. Downey, and J&K Appraisal's ("Defendants") motion to dismiss Plaintiff Federal Deposit Insurance Corporation's ("FDIC" or "Plaintiff") Complaint for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 34.) Plaintiff filed opposition (ECF No. 40), and Defendants replied (ECF No. 41). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' motion to dismiss Plaintiff's Complaint for lack of standing is granted.

**I.**    **Background**

The FDIC, as receiver for AmTrust Bank ("AmTrust"), a failed bank, brought this lawsuit against Defendants, real estate appraisers, in connection with a June 2007 mortgage loan refinancing transaction in the amount of $1,537,250 (the "Loan"). (Compl. ¶ 6, ECF No. 1.)

Defendants provided appraisal reports in May 2007 in connection with the refinancing transaction, which "were communicated and provided to AmTrust for its consideration for underwriting the [L]oan." (*Id.* ¶¶ 11-12.) The FDIC alleges that AmTrust relied on Defendants' appraisal reports, which inflated the true value of the property, in approving the Loan. (*Id.* ¶¶ 11, 13.) The FDIC alleges that, as a result of the inflated value in the appraisal reports, "[a]pproximately one year after the closing, [the borrower] defaulted on the AmTrust loan and . . . . [i]n December 2009, a short sale was made of the property for $1,100,000, which was less than a half of the appraised value." (*Id.* ¶ 14.) The Complaint asserts claims against Defendants for negligence, negligent misrepresentation, and breach of contract. (*Id.* ¶¶ 32-49.)

Defendants now assert that AmTrust assigned any and all claims that could be brought against them to Goldman Sachs Mortgage Company ("Goldman Sachs"). On June 23, 2009, AmTrust and Goldman Sachs entered into a Mortgage Loan Purchase Agreement ("Purchase Agreement"), which purchased a group of mortgage loans including the Loan. (Sheldon Cert., Ex. A FDIC 000884, ECF No. 34-1.) In the Purchase Agreement, AmTrust assigned to Goldman Sachs "all the right, title and interest of [AmTrust] in and to the Mortgage Loans." (*Id.* § 1(b).) Mortgage Loan is defined in the Purchase Agreement as:

> A mortgage loan identified on Schedule I, including without limitation, the related Mortgage Loan Documents and all other material and information collected by the Interim Servicer in connection with the Mortgage Loan including Monthly Payments, Liquidation Proceeds, Insurance Proceeds and all other rights, benefits and proceeds arising from or in connection with such Mortgage Loan.

(*Id.* at 4.) The Purchase Agreement defines "Mortgage Loan Documents" "[as] the documents listed on <u>Exhibit B</u>." (*Id.*) Exhibit B to the Purchase Agreement is entitled "MORTGAGE LOAN FILES" and states:

> <u>Mortgage Loan File Requirement</u>: For each Mortgage Loan the Seller shall deliver a Mortgage Loan File to the Purchaser that contains each of the following

2

>   documents: (a) . . . Mortgage Note . . . , (b) . . . recorded . . . Mortgage Loan . . . , (c) . . . Assignment of Mortgage . . . , (d) . . . chain of title . . . , (e) . . . Title Insurance policy, (f) . . . Primary Mortgage Insurance policy . . . , (g) . . . each assumption agreement, modification, written assurance or substitution agreement pertaining to such Mortgage Loan . . . , (h) residential long-term lease . . . .

(*Id.* at Ex. B.) The Purchase Agreement defines "Mortgage Loan File" "[as] a file which contains the Mortgage Loan Documents, as well as any other documents that come into the Seller's or Interim Servicer's possession with respect to such Mortgage Loan." (*Id.* at 4.) "Interim Servicer" is defined as the "Seller." (*Id.* at 3.)

The Purchase Agreement also contains representations and warranties between AmTrust and Goldman Sachs, including the following:

>   <u>The Appraisal Report</u>.
>
>   The Mortgage Loan Documents contain an Appraisal Report (except with respect to a HUD streamline refinance) of the related Mortgaged Property by an appraiser who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof; and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and the Appraisal Report and the appraiser both satisfy the application requirements of Title XI of the Financial Institution Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date of the Mortgage Loan was originated . . . .

(*Id.* § (3)(b)(24).) On December 4, 2009, AmTrust closed, and the FDIC was appointed as the receiver. (Compl. ¶ 3.)

Defendants now move to dismiss the FDIC's Complaint arguing AmTrust sold and assigned any right that it may have had against Defendants to Goldman Sachs through the Purchase Agreement, and therefore, the FDIC is not a party in interest for the loss of the Loan. (Defs.' Br. 3, ECF No. 34-2.)

**II.     Parties' Positions**

Through the Purchase Agreement, AmTrust assigned to Goldman Sachs "all the right, title and interest of [AmTrust] in and to the Mortgage Loans." (Sheldon Cert., Ex. A § 1(b).) Both parties agree that to determine which rights AmTrust assigned to Goldman Sachs, one must look to how the Purchase Agreement defines "Mortgage Loan."

FDIC argues that the definition of "Mortgage Loan" "has two, separate components: (1) the 'Mortgage Loan Documents' or (2) 'all other material and information collected by the ... Servicer including Monthly Payments ... and all other rights ... arising from or in connection with such Mortgage Loan." (Pl.'s Opp'n 6, ECF No. 40.) As to the first component, Plaintiff compares the definition of "Mortgage Loan Documents" with that of "Mortgage Loan File" and concludes that the latter is "defined much broader ... [and] includes the Mortgage Loan Documents and loan origination documents." (*Id.* at 7.) As a result, Plaintiff asserts that, by definition, the Mortgage Loan Documents "only include[] material and information collected in the course of loan servicing." (*Id.* at 8.) As for the second component, Plaintiff asserts that the preceding words, "material and information collected by," demonstrate that this component deals only with "collection (by the servicer, which deals with collection and administration of the loan) of loan payments arising *after the origination of the loan.*" (*Id.* at 7 (emphasis in original).)

In contrast, Defendants assert that the definition of "Mortgage Loan" has three components, not two: "(1) the 'related Mortgage Loan Documents,' (2) all other material and information collected by the Interim Servicer in connection with the Mortgage Loan, and (3) 'all others rights, benefits and proceeds arising from or in connection with such Mortgage Loans.'" (Defs.' Reply 5, ECF No. 41.) Based on the language "all other rights ... arising from or in connection with such Mortgage Loans," Defendants argue that AmTrust assigned its rights against

4

Defendants to Goldman Sachs, and as a result, Plaintiff does not have standing to sue. Additionally, Defendants argue that "Am[T]rust and Goldman Sachs specifically envisioned that Goldman Sachs would rely on the accuracy of the loan appraisals." (Pl.'s Moving Br. 8, ECF No. 34-2.) In support of this argument, Defendants refer to AmTrust's warranties to Goldman Sachs contained within the Purchase Agreement, which, in relevant part, state: "The Mortgage Loan Documents contain an Appraisal Report . . . of the related Mortgaged Property by an appraiser who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof." (*Id.*)

Plaintiff concedes that if the scope of the definition of "Mortgage Loan" is found to constitute the entire mortgage loan transaction "which necessarily includes the appraisal report," and not just the mortgage loan contract, then Plaintiff's causes of action against Defendants are within the assignment language of the Purchase Agreement. (Pl.'s Opp'n 6.)

### III. Legal Standard

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The concept of standing is drawn directly from Article III, Section 2 of the Constitution . . . [and] goes to the very heart of a court's subject matter jurisdiction." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460 (D.N.J. 2005), (citation omitted). "Plaintiff[] bear[s] the burden of demonstrating standing." *Id.*

To establish Article III standing a plaintiff must demonstrate that: (1) he is under threat of suffering injury-in-fact that is both "concrete and particularized" and "actual and imminent"; (2) the threat is fairly traceable to the challenged action of the defendant; and (3) it is likely that a favorable judicial decision will prevent or redress the injury. *See Summers v. Earth Island Inst.*,

555 U.S. 488, 493 (2009). The three elements constitute "the irreducible constitutional minimum" of Article III standing. *Lujan*, 504 U.S. at 560-61. An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3d Cir. 2009). This is because Article III "limit[s] access to the federal courts to those litigants best suited to assert a particular claim." *The Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000).

"In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack takes the facts in the pleadings as true, construed in the light most favorable to the plaintiff, and determines therefrom whether jurisdiction exists. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *modified*, *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003); *see also Mortensen*, 549 F.2d at 891; *Lujan*, 504 U.S. at 561. A factual attack, on the other hand, allows the district court to consider evidence outside the pleadings, to which "no presumptive truthfulness attaches," weigh evidence, and shift the burden of proving jurisdiction onto the plaintiff. *Mortensen*, 549 F.2d at 891.

IV. **Analysis**

In the present case, Defendants present a factual attack to this Court's subject matter jurisdiction over the action, arguing that AmTrust, and its receiver the FDIC, do not possess the right of action against Defendants claimed in this action because AmTrust assigned that right to Goldman Sachs through the Agreement.

Under New York law, which the parties agree controls the Agreement's interpretation, the initial question is whether the Agreement is ambiguous with respect to the issue disputed by the

parties.[1] *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). The matter of whether the Agreement is ambiguous is a question of law for the Court. *See id.* Under New York law, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a reasonable interpretation." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (3d Cir. 2010) (internal quotation marks omitted). "Thus, the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [] the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (1957)).

"In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)). "Where the parties dispute the meaning of particular contract clauses, the task of the court is to determine whether such clauses are ambiguous when read in the context of the entire agreement, and where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." *Law Debenture Trust Co. of N.Y.*, 595 F.3d at 467 (internal quotation marks omitted).

In the present case, Plaintiff's interpretation of the definition of "Mortgage Loan" is unreasonable. Plaintiff argues that the definition is made up of two components. In support of

---

[1] Plaintiff additionally argues that while "the legal effect of the assignment is a question of New York law," "New Jersey law clearly applies to the FDIC[]'s claims against the appraiser." (Pl.'s Opp'n 2.) The Court not need to reach Plaintiff's secondary argument regarding application of New Jersey law to the causes of action, as the Court finds, under New York law, the FDIC, through AmTrust, assigned its rights asserted against Defendant in this action to Goldman Sachs.

7

this argument, Plaintiff asserts that the first component includes only material and information collected during the servicing of the loan, but then concludes that the second component also includes only material and information collected during the servicing of the loan. "In order to ascribe meaning, if possible, to all the contract terms [the second component] must be read to transfer something more than [the first component]." *Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 152 (2d Cir. 1995). Plaintiff's interpretation of the definition of "Mortgage Loan" renders the second component superfluous, as it includes only the same material and information already defined in the first component.

When the definition of "Mortgage Loan" is read in the context of the entire Agreement, it is clear that the parties to the Agreement intended to assign all rights related to the appraisal reports to Goldman Sachs. The definition of Mortgage Loan, without question, includes the "Mortgage Loan Documents." The Agreement defines "Mortgage Loan Documents" by referencing Exhibit B to the Agreement, which is entitled "MORTGAGE LOAN FILES." Exhibit B states only that "[f]or each Mortgage Loan, the Seller shall deliver a Mortgage Loan File to the Purchaser" and then recites various different documents and information. (Agreement at FDIC000910-11.) The body of the Agreement, however, states that the "Mortgage Loan Documents contain an Appraisal Report." (*Id.* § 3(b)(24).) Additionally, the definition of "Mortgage Loan" refers to those loans identified on Schedule I. (*Id.* at 4.) Schedule I to the Agreement contains various information regarding loan numbers, the mortgaged property, the mortgagee, and the insurance, but also includes appraisal information. (*Id.* at FDIC 000860.) In order to give full meaning and effect to all the words and phrases of the Agreement, the definition of "Mortgage Loan" must include the appraisal report.

8

The Court finds the assignment language in the Agreement covers the causes of action brought against Defendants in Plaintiff's Complaint because "Mortgage Loan" is defined broadly to include the appraisal reports at issue. *See, e.g.*, *Banque*, 57 F.3d at 152; *Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Culture Pearl Corp.*, 929 N.Y.S.2d 203 (2011). Here, Plaintiff cannot demonstrate an injury-in-fact for standing purposes because it does not have a legally protected interest in a claim AmTrust assigned to Goldman Sachs. Accordingly, this Court lacks subject matter jurisdiction to hear this action.

V.  **Conclusion**

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' motion to dismiss Plaintiff's Complaint for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted.

*[signature]*
**Michael A. Shipp**
**United States District Judge**

Dated: January 29, 2015